## SUCZEK v. GENERAL MOTORS CORPORATION.
### No. 6779.

District Court, E. D. Michigan, S. D.
Nov. 28, 1940.

Swan, Frye & Hardesty, and George Rex Frye, Francis D. Hardesty, and John C. L. Cowen, all of Detroit, Mich., for plaintiff.

Cooper, Kerr & Dunham, and Drury W. Cooper, Sr., and Drury W. Cooper, Jr., all of New York City, and Fred E. Jones, of Detroit, Mich., for defendant.

TUTTLE, District Judge.

This action was brought for the infringement of patent No. 1,970,823, granted to Robert Suczek, the plaintiff, on August 21, 1934, upon an application filed July 16, 1932, for vehicle wheel suspension and springing. By a bill of particulars and in open court at the trial, plaintiff limited his charge of infringement to claims 25 to 32, inclusive, of the patent. Claim No. 27 is a typical claim, and reads as follows: "27. In an independently sprung vehicle wheel suspension, the vehicle having a frame and/or body structure and a wheel structure, the suspension comprising a lever whose fulcrum is suspended from or supported by the vehicle body or frame structure, means to hingeably attach the wheel structure to the lever, elastic means acting through said lever to resiliently support the vehicle weight on the wheel, an arm pivotally suspended from or supported by the vehicle body or frame structure, and hingeably attached to the wheel structure for guiding a point of the wheel in collaboration with the lever, on a substantially straight line when the wheel is displaced relative to the vehicle body and means to locate the fulcrum axis of the lever and the pivot axis of the arm at acute angles to the longitudinal vertical center plane of the vehicle."

The title to the patent was stipulated by the parties to be "held by the plaintiff Suczek at the date of filing of the bill of complaint and still remains in plaintiff." It was further stipulated between the parties that plaintiff's Exhibits 9a, 9b and 9c (being blueprints respectively numbered 1,406,282, 405,130 and 1,266,904) are of wheel suspensions which the defendant has made, used and sold subsequent to the issuance of the patent in suit and prior to the filing of the bill of complaint herein.

The blueprints (plaintiff's Exhibits 9a, 9b and 9c) are of wheel suspensions used on the following cars:

scribed in Automotive Industries, pages 758–764, inclusive, published December 23, 1933 (Defendant's Exhibit 12) and that the defendant, beginning about the first of January, 1934, and continuously thereafter, put out cars with the construction upon them now charged to infringe.

This patent evidently grew out of an application based on the knowledge that there was prior art showing constructions that would guide the lower part of a vehicle wheel up and down in a straight line parallel to the longitudinally vertical center plane of the vehicle, independently of the body or other wheels, and Suczek evidently thought that there would be an advantage in guiding the independently sprung wheel to move not only its point of contact with the ground in such a path, but also the entire wheel rather than swinging the upper parts of the wheel in an arcuate manner.

Suczek thought there was invention in moving the whole wheel in the same plane, and that he had a novel linkage to achieve this. The file wrapper and the patent clearly support this view, and yet we wind up with a lawsuit about some claims which plaintiff asserts have nothing at all to do with that feature, but are concerned only with guiding a point of the wheel in a straight line, by levers whose pivot axes are at acute angles to the center line of the car.

The Suczek patent discloses a construction comprising levers of the first order each attached to the car at an angle to the longitudinal axis of the car by two links. One end of each lever is attached to the wheel spindle support, and each lever has a fulcrum intermediate of its ends which is supported by one of the links, while the inner end of each lever is pivotally supported by the other link.

This peculiar wheel supporting link and lever arrangement of the patent is characterized by the fact that it causes the whole

| Cadillac | V–12 | | | 1934 | Exhibit 9a |
|---|---|---|---|---|---|
| Oldsmobile | Model | F–35 | | 1935 | |
| Oldsmobile | Model | 104–35 | (L–35) | 1935 | — Exhibit 9b |
| LaSalle | Model | 35–50–B | | 1935 | |
| Buick | Model | 46–34 | (Series 40) | 1934 | — Exhibit 9c |
| Buick | Model | 41–35 | (Series 40) | 1935 | |

It has been further stipulated between the parties that defendant's structure as now charged to infringe claims 25 to 32, inclusive, of the patent in suit was described in

wheel as it comes into contact with uneven spots in the road to be guided up and down in a plane parallel to the longitudinal vertical center plane of the car. The links

at the inner ends of the levers act as crank arms to which are attached torsion car supporting springs. The length of this crank arm is proportioned to the lengths of the two arms of the lever in such a way that the swinging fulcrum permits the wheel end of the lever to travel up and down in a plane parallel with the longitudinal vertical plane of the car. In this way the tire is not scrubbed on the ground as it is moved up and down by the unevenness of the road. Suczek shows, in some figures of his patent drawings, only one of these peculiar lever arrangements per wheel; in other figures of his patent drawings he shows two such lever arrangements per wheel, placed at angles to each other so as to have the advantage of a triangulated structure for taking both longitudinal and transverse forces.

Independently sprung wheels for motor vehicles were old in the art long before Suczek applied for his patent. This old art also shows the application to independent wheel suspensions, of a straight line movement originated by James Watt and used by him on his steam engine over one hundred years ago. The application of the Watt straight line movement to independently sprung wheels did not guide the whole wheel in a vertical line parallel to the vertical center plane of the car, as does the Suczek patent in suit, but so guided only one point of the wheel, and that was the point of contact with the ground. The other parts of the wheel moved in arcs of circles. The action just described is old and is that of defendant's structures charged to infringe. It is the straight line movement early taught and used by James Watt as set forth on page 314 of Heck's Mechanics of Machinery Mechanism, published in 1923, and further shown as applied to independently sprung automobile wheels in the prior United States patent to Holle No. 1,529,182, granted March 10, 1925, and others, such as Ballot patent No. 1,687,191, granted October 9, 1928, that is used by defendant.

The defendant's construction has independently sprung wheels each mounted on a wheel spindle supported by two arms pivotally attached to the car body. One arm is pivotally attached to the upper part of the wheel spindle support and the other arm to the lower part. The axes of these arms are arranged at acute angles to the longitudinal axis of the car, and the lengths of the arms follow the proportions which Watt discovered and used. These proportions are as follows: the length of the upper arm should be to the length of the lower arm as the distance of the lower arm from the ground is to the distance of the upper arm from the ground. Use of this formula insures that the point of contact of the wheel with the ground will be guided up and down in a straight line while all other parts of the wheel and its suspending mechanism move in arcs of circles. This prevents scrubbing of the tire on the ground.

Before Suczek's patent was granted, defendant had accomplished the practical use of the old Watt geometry for tilting the whole wheel except the bottom. There was large commercial use by defendant and it was well known. It is after that use by defendant that Suczek brought into this patent all of the claims here in suit.

The defendant produced its whole line of Cadillacs and Buicks containing the "knee-actions" charged to infringe, and was selling those cars to the public about the first of January, 1934, and the patentee did not insert in his claims the idea of having only a single point in the wheel move up and down in a straight line, as distinguished from having the whole wheel so move, until March 9, 1934, when claims 25 to 31, inclusive, were first inserted. In the amendment the applicant stated:

"Applicant has found that other means than the crank and lever are possible to obtain the substantially straight line motion with a structure as claimed in claims 76 to 77" (claims 26 and 27 of patent as issued and here in suit).

Thereafter, and on April 24, 1934, claim 32 was inserted in the application.

The patentee was hard driven in the Patent Office, and he kept turning and twisting from one angle to another, until finally these claims in suit were allowed. At the same time, it is evident that he was enticed and guided to these claims by the car which in the meantime had been put on the market by the defendant.

What the defendant is doing is more like Holle than it is like Suczek. The results are more like Holle. Suczek moved his whole wheel in a straight line from the ground. Holle did not do that and defendant does not do that.

The defendant does not employ the geometry of the patent in suit, but employs that of Watt as disclosed in Holle

and others. The two principles are very different, but nevertheless we wind up with these claims in suit that bother me, because the patent seems by these claims in suit to have drifted away from its own kind of action, to the angle which the pivot axes of the arms make to the center line of the car.

There were claims in the application as filed which claimed the two arms at an angle to one another. Later claims were drawn to cover levers which were at angles to the center line of the car, and finally claims were introduced (but only after defendant had produced its structure and sold it to the public) to cover levers the axes of whose pivots were to be at acute angles to the center line of the car.

The plaintiff admits that both Holle and Ballot disclose the whole combination of the claims in suit except the element claimed as "means to locate the fulcrum axis of the lever and the pivot axis of the arm at acute angles to the longitudinal vertical center plane of the vehicle."

This element plaintiff now asserts to be the crux of the invention.

The theory of the plaintiff that putting the levers at angles to the longitudinal center line of the car reduces the swaying of the car is very complicated. I believe, however, it is analogous to this: That if you push directly on the rear of a car, you get the benefit of all your strength in the path of the car's forward movement, but just as soon as you begin to push obliquely or across the line of forward movement, then not all of the force is used to move the vehicle in its direction of travel, but some of it is crosswise tending to tilt or rock the car.

Similarly, if we have an undesirable side force which tilts the car and may tip it over, and can so arrange that it has a force component which is exerted longitudinally of the car, we have only what is left that will tend to tip the car over.

It takes a lot of the record to tell it, and I believe that our tests here show this difference, but it is very small, amounting to only about one-eighth inch of side sway at the eye level of an occupant of the car. The small model demonstrations showed that, other things being equal, the turning of the axes to a fifteen degree angle to the center line of the car reduced the side sway by less than one-eighth inch as measured at the end of a four-foot pendulum.

This, in turn, can be transposed above the center of gravity to the same inappreciable movement at the eye level of an occupant of the car.

However this may be, and whether or not a reduction in sway results from the disposition of the pivot axes of the arms at acute angles to the center line of the car, I am satisfied that Holle in Figures 1 to 3 does show the pivot axes of the arms "at acute angles to the longitudinal vertical center plane of the vehicle" as called for by the claims in suit, while as an alternative, in Figures 4 to 7, he shows them parallel to the center line of the car.

Furthermore, in the last paragraph on the first page of his patent specification, Holle says: "It will be obvious that the frame axis may be arranged at any suitable or desired angle relative to the longitudinal center line of the undercarriage other than at right angles as shown in the accompanying drawings."

The defendant has done just what Holle says he could do; namely, he has arranged the arms at a suitable and desired angle.

The patent in suit is lacking in any disclosure as to the specific angle at which the levers or their axes are placed; so whatever may be said against the Holle disclosure in that respect may also be said against the Suczek patent in suit. An applicant for a patent need not describe all the arrangements that may go into his structure. He must, however, disclose what his invention is and then he may leave some of the details for good mechanics to supply.

Holle said he could arrange the levers at angles other than right angles. The plaintiff contends that the things which it was necessary to do in order to make it work were not obvious, and that the ordinary skilled mechanic would have made an unworkable wheel suspension. The way I interpret the situation, however, is that when Holle said he could arrange his arms at angles other than at right angles to the car, the ordinary mechanic, skilled in the art, could have done it at the time Suczek applied for his patent. We know today from defendant's cars that such a thing is operative. We know that defendant did it before Suczek made the claims in suit and before the Suczek patent issued.

In 1924, Holle had nearly the identical thing that the defendant is using and

810

Holle taught that he could swing the arms anywhere he desired. The defendant has done that very thing and I do not think I should reach the conclusion that Holle was inoperative. Suczek was not the first to discover or teach that the arms could be attached in the way that the defendant has done.

The commercial development of Holle as shown on pages 222–224 of The Commercial Motor, published on October 12, 1926, discloses the arms of the wheel suspensions set at angles other than at right angles to the center line of the car, so again plaintiff's contention that this could not be operatively done at a date, prior to Suczek's is unsound.

I hold these claims in suit (25 to 32, inclusive) to be invalid in view of the patent to Holle No. 1,529,182, granted March 10, 1925.

This opinion shall stand as the findings of fact and conclusions of law under the provisions of Civil Procedure Rule 52(a), 28 U.S.C.A. following section 723c.

There shall be a judgment for defendant dismissing the complaint, with costs to be taxed in defendant's favor.